UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

MEMORIAL HALL MUSEUM, INC.,                                          Plaintiff

v.                                             Civil Action No. 3:16-cv-666-RGJ

MICHAEL R. CUNNINGHAM                                               Defendant

* * * * *

## MEMORANDUM OPINION & ORDER

Defendant Michael R. Cunningham ("Cunningham") moves for summary judgment. [DE 28]. Plaintiff Memorial Hall Museum, Inc. ("Memorial Hall") responded and Cunningham replied. [DE 34, DE 36]. Memorial Hall moved in limine to exclude or limit the expert testimony of Cunningham. [DE 29]. Cunningham responded. [DE 33]. For the reasons below, the motion for summary judgment is **DENIED**, and the motion in limine is **GRANTED IN PART**.

## BACKGROUND

Memorial Hall is a museum in New Orleans, Louisiana. [DE 1, Compl. at 1]. Memorial Hall sued Cunningham to recover two Civil War uniforms worn by Confederate soldiers, Charles Herbst ("Herbst uniform") and David W. Pipes ("Pipes uniform")(collectively "Stolen Coats"). [*Id*.] Memorial Hall alleges that the Stolen Coats now reside with Cunningham. Cunningham is domiciled in Louisville, Kentucky. *Id*. In July 1979, a member of the Memorial Hall board, Henry Morris, discovered that the Herbst uniform was missing. [DE 28, Def's Mot. Sum. Judg., at 125-26]. By the mid-1980s, Memorial Hall discovered that the Pipes uniform was also missing. *Id*. at 127. In the mid-to-late 1980s, an attendee of a Civil War Show informed Memorial Hall that the Pipes uniform was on display at the show. [DE 34, Plf's Resp., at 574]. Memorial Hall was unable to gather any more information about the identity of the exhibitor and took no further action toward

1

recovery at that time. *Id*.  Memorial Hall thought about the issue again in 1990 during an inventory, and Chief Morris with the New Orleans Police Department decided to re-investigate. *Id*.  Chief Morris then died and the extent and results of his re-investigation are unknown. *Id*. at 575.

Cunningham bought the Herbst uniform in 1980. [DE 28, Def's Mot. Summ. Judg., at 127]. In 1986, he publicly displayed the uniform at a Civil War Show.  *Id*.  "He also freely allowed numerous colleagues to publish photographs of [the] Herbst uniform in print and online." *Id*. at 127-28. In 2007, the magazine *Civil War Historian* published an article that Cunningham wrote about the Herbst uniform, including a picture of the uniform. *Id*. at 6.  Cunningham bought the Pipes uniform in 1985. *Id*. at 128. An exhibitor publicly displayed the Pipes uniform at a Civil War Show.  *Id*.  "As with the Herbst uniform, [Cunningham] . . . made photos of the Pipes uniform freely available for print and online publication by various outlets over the years." *Id*.

Memorial Hall claims that it "does not have the resources to canvas the country searching for missing items, but that [Memorial's] practice was to follow-up on an available information regarding the whereabouts of stolen items when such information becomes available." [DE 34, Plf's Resp., at 572]. In 2011, Cunningham gave photographs of his uniforms to Fred Adolphus, a museum curator who published the pictures on his website. [DE 28, Def's Mot. Summ. Judg., at 129]. Adolphus informed Memorial Hall that he saw the Stolen Coats in Cunningham's collection on October 27, 2015. *Id*. Memorial Hall then to action to recover the Stolen Coats and filed the current civil litigation on October 24, 2016.  *Id*.

## JURISDICTION

First, the Court must ensure its subject-matter jurisdiction. Upon its own motion this Court directed the parties to brief subject matter jurisdiction about whether the amount in controversy exceeds $75,000, as required by 28 U.S.C. § 1332(a). [DE 41].

Memorial Hall submitted the affidavit and appraisal report of John Sexton ("Sexton"). Sexton is an appraiser with experience in antique American historical property. [DE 42-1, DE 42-2]. In 2017, Sexton appraised the Stolen Coats at a combined fair market value of $110,000 and combined insurance retail replacement value of $140,000. [DE 42-1 at 668].

Cunningham filed his own affidavit, criticizing the Sexton appraisal and opining the combined value of the uniforms is $54,000. [DE 43-1]. Cunningham asserts that the Stolen Coats are only worth a combined value of $30,263 in 2019 based on inflation [DE 43-1 at 699]. He asserts that the enthusiasm and demand for Civil War collecting has slowed because of the 2008 recession [DE 43-1 at 701]. He also argues that Confederate uniforms have grown unpopular and controversial [DE 43-1 at 702]. Cunningham opposes many comparable uniforms in Sexton's appraisal.  He argues some of the values are as based on high and unmet asking prices, reflected sale prices attained more than 10 years ago, or possessing rare or unique features rending them dissimilar. [DE 43-1 at 708–21].

The Court must determine whether a sufficient amount in controversy exists for this Court to exercise jurisdiction. Memorial Hall seeks a judgment "declaring Memorial Hall as the true owner of the Stolen Coats with title superior to all others; [] ordering the issuance of a writ directing [Cunningham] to return the Stolen Coats to Memorial Hall; and [] all other equitable relief as this Court may deem equitable and appropriate under the law." [DE 1 at 6]. In suits for injunctive relief "the amount in controversy is measured by the value of the object of the litigation." *Hunt v. Wash. State. Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977); *see also Cleveland Hous. Renewal Project v. Deusche Bank Trust Co.*, 621 F.3d 554, 560 (6th Cir. 2010). "In diversity cases, the general rule is that the amount claimed by a plaintiff in his complaint determines the amount in controversy, unless it appears to a legal certainty that the claim is for less than the jurisdictional amount." *Rosen*

3

*v. Chrysler Corp.*, 205 F.3d 918, 920-21 (6th Cir. 2000). Some federal courts in Kentucky consider the amount in controversy from the point of view of the party seeking to invoke federal jurisdiction. *Bedell v. H.R.C. Limited*, 522 F. Supp. 732 (E.D. Ky. 1981); *see also, Family Ford Motor Inn, Inc. v. L-K Enterprises Division Consolidated Foods Corporation*, 369 F. Supp. 766 (E.D. Ky. 1973).

Here, the requisite amount in controversy exists. Memorial Hall is the party seeking to invoke federal jurisdiction. Memorial Hall's anticipated loss, as explained in the Sexton affidavit, exceeds the jurisdictional minimum. Sexton is an experienced appraiser. Even discounting Sexton's values according to Cunningham's criticisms, a preponderance of the evidence still establishes the value of the Stolen Coats exceeds the jurisdictional amount and does not show to a legal certainty that the claim is for less than the jurisdictional amount. The Court is satisfied that it may properly exercise jurisdiction over this matter.

## STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment is appropriate if the moving party shows that there is no genuine issue of material fact about an essential element of the nonmoving party's case on which the nonmoving party would bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986).

In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences in a light most favorable to the nonmoving party. *60 Ivy St. Corp. v. Alexander,* 822 F.2d 1432, 1435 (6th Cir. 1987). The Court is not required or permitted, however,

to judge the evidence or make findings of fact. *Id.* at 1435–36. The moving party has the burden of proving that no genuine issue of material fact exists. *Id.* at 1435.

A fact is "material" if proof of that fact could establish or refute an essential element of the cause of action or a defense advanced by the parties. *Kendall v. Hoover Co.,* 751 F.2d 171, 174 (6th Cir. 1984). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986). Thus, when a reasonable jury could not find that the nonmoving party is entitled to a verdict, there is no genuine issue for trial and summary judgment is appropriate. *Id.*

Once the moving party carries the initial burden of proving that there are no genuine issues of material fact in dispute, the burden shifts to the nonmoving party to present specific facts to prove that there is a genuine issue for trial. *Anderson,* 477 U.S. at 256, 106 S. Ct. 2505. To create a genuine issue of material fact, the nonmoving party must present more than just some evidence of a disputed issue. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S. Ct. 1348, 89 L.Ed.2d 538 (1986). United States Supreme Court has stated, "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmoving party's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249–50, 106 S. Ct. 2505 (citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson,* 477 U.S. at 252, 106 S. Ct. 2505.

## ANALYSIS

### 1. Statute of Limitations

The first issue is whether Memorial Hall's claim is barred by Kentucky's statute of limitations. [DE 28]. "Federal courts sitting in diversity must apply the procedural law of the forum, here Kentucky, including its statutes of limitations." *Combs v. Int'l Ins. Co.,* 163 F. Supp. 2d 686, 690 (E.D. Ky. 2001) (citing *Elec. Power Bd. of Chattanooga v. Monsanto Co*., 879 F.2d 1368, 1375 (6th Cir. 1989)). In Kentucky, a party seeking to recover stolen property must file suit within one-year after accrual.  KRS 413.140(1)(i). Actions to recover stolen property "shall be deemed to accrue at the time the property is found by its owner." KRS 413.140(5). Cunningham assumes for purposes of his Motion that the action accrued when the museum acquired actual knowledge of the uniforms' location, [DE 28, n.54 at 137]. The parties agree that this was October 27 or 28, 2015, when Adolphus informed Ricci that he had seen the Herbst and Pipes uniforms in Cunningham's collection. [DE 28 at 129, DE 34 at 575]. Memorial Hall sued within one year, on October 24, 2016. [DE 1, Compl.].  Memorial Hall's claim is thus timely under Kentucky's statute of limitations.

Cunningham cites *Roman Catholic Diocese of Covington v. Secter*, 966 S.W.2d 286, 288 (Ky. App. 1998) for the proposition that the "discovery rule" applies to actions for recovery of stolen property. [DE 28 at 140]. The Kentucky Court of Appeals' decision in *Secter* states this about the recovery of stolen property and the discovery rule:

> KRS 413.140(1)(a) provides that a personal injury action must be commenced within one year "after the cause of action accrued." Generally, a cause of action is said to accrue when the injury occurs. *Caudill v. Arnett,* Ky., 481 S.W.2d 668, 669 (1972). However, in certain cases, a cause of action does not necessarily accrue when the injury occurs, but rather when the plaintiff first discovers the injury or should have reasonably discovered it. **Pursuant to KRS 413.140(2), causes of action for medical malpractice or recovery of stolen property are subject to the discovery rule rather than the general occurrence rule.**

6

*Sector,* 966 S.W.2d at 288 (emphasis added). From this *dicta*, Cunningham argues that the "discovery rule" applies. *Sector* mentions in passing that "recovery of stolen property," along with medical malpractice actions, are subject to the discovery rule. The statement cites KRS 413.140(2), but that section of the statute does not address stolen property, only medical malpractice:

> In respect to the action referred to in paragraph (e)[medical malpractice] of subsection (1) of this section, the cause of action shall be deemed to accrue at the time the injury is first discovered or in the exercise of reasonable care should have been discovered; provided that such action shall be commenced within five (5) years from the date on which the alleged negligent act or omission is said to have occurred.

*Sector* is from 1998. The Kentucky legislature has amended KRS 413.140 several times since 1998. To apply the "discovery rule" from KRS 413.140(2), which is limited to medical malpractice, to KRS 413.140(i)(actions for recovery of stolen property) would be to contravene the express language of KRS 413.140(5) which states, "[i]n respect to the action referred to in paragraph (i) of subsection (1) of this section, the cause of action shall be deemed to accrue *at the time the property is found by its owner*." (emphasis added). Kentucky's legislature expresses an accrual standard for stolen property that turns on when the property is found by its owner, not discovery that the items is missing. This reflects Kentucky's law that one who purchases stolen property, even in good faith, does not acquire good title. *Bozeman Mortuary Ass'n v. Fairchild*, 68 S.W.2d 756, 759 (Ky. App. 1934)("[a]n owner is never divested of his property by theft, and therefore a sale by a thief, or by any person claiming under a thief, does not vest title in the purchaser as against the owner though the sale was made in good faith and in the ordinary course of trade. Title to personal property, like a stream, cannot rise higher than its source").    The discovery rule and cases cited by Cunningham are inapplicable.

Cunningham also argues that Kentucky's borrowing statute requires the Court to apply Louisiana law to bar Memorial Hall's claim. [DE 28 at 138]. As a sister court has explained,

"Kentucky has a 'borrowing statute' that, when applicable, 'borrows' the limitations period of another state where a cause of action accrues, when that period is shorter than Kentucky's limitations period. The borrowing statute is triggered only when the cause of action accrued in another jurisdiction." *Combs*, 163 F. Supp. 2d at 691 (internal citation omitted). The statute provides:

> When a cause of action has *arisen* in another state or country, and by the laws of this state or country where the cause of action *accrued* the time for the commencement of an action thereon is limited to a shorter period of time than the period of limitation prescribed by the laws of this state for a like cause of action, then said action shall be barred in this state at the expiration of said shorter period.

KRS 413.320. To determine whether Kentucky's borrow statute applies, this Court must consider:

> (1) Whether the cause of action accrued in another state;
>
> (2) If the cause of action did accrue in another state, whether that state's statute of limitations for the particular cause of action is shorter than the corresponding Kentucky statute of limitations; and
>
> (3) If the accrual state's statute of limitations is shorter than Kentucky's, then the statute of limitation of the accrual state is applied; but if the statute of limitations for the cause of action in the accrual state is longer than Kentucky's, then apply Kentucky's statute of limitations.

*Combs*, 163 F. Supp. 2d at 691 (quoting *Willits v. Peabody Coal Co*., 188 F.3d 510, 1999 WL 701916, at *12 (6th Cir. 1999)). As discussed above, Memorial Hall's action "accrue[s]" under Kentucky law, "at the time the property is found by its owner." KRS 413.140(5). Accrual occurred when Memorial Hall discovered the Stolen Coats were in Cunningham's possession in Kentucky. Since Memorial Hall's claim accrued in Kentucky, the Court need not determine whether Louisiana's statute of limitations is shorter than Kentucky's.

### 2. The Doctrine of Laches

Having determined Memorial Hall's claim is timely, the next issue is whether the doctrine of laches bars Memorial Hall's claim. Cunningham cites Kentucky law, asking this Court to

employ the equitable doctrine of laches to bar Memorial Hall's claim even though it was timely under Kentucky's applicable statute-of-limitations. [DE 28 at 148]. Memorial Hall likewise cites substantive Kentucky law on laches. [DE 34 at 596].

> a.   *Which substantive law applies.*

Despite the parties apparent agreement that Kentucky's substantive law applies, the Court must determine which substantive law applies to this case. "In deciding what law applies to a particular case, one must first look to the forum state's choice of law statute." *Elec. Power Bd. of Chattanooga,* 879 F.2d at 1375 (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938); *Day & Zimmermann, Inc. v. Challoner*, 423 U.S. 3 (1975)). Federal courts sitting in diversity must determine which state's law to apply to the case and begin by analyzing the choice-of-law rules of the forum state, here Kentucky, to determine which state's law controls. *Louisville/Jefferson Cty. Metro Gov't v. Hornblower Marine Servs.-Kentucky, Inc.*, No. 3:06-CV-348-S, 2009 WL 3231293, at *6 (W.D. Ky. Oct. 2, 2009).   The applicable choice-of-law rule depends on whether the claim sounds in tort or contract. *Sierra v. Williamson*, No. 4:10-CV-00079-TBR, 2013 WL 3456988, at *2 (W.D. Ky. July 9, 2013). This distinction is important because Kentucky courts use separate tests for cases arising in tort and cases arising in contract. *Id.,* citing *Saleba v. Schrand*, 300 S.W.3d 177, 181 (Ky. 2009).

Kentucky courts "are very egocentric or protective concerning choice of law questions."[1] *Paine v. La Quinta Motor Inns, Inc.*, 736 S.W.2d 355, 357 (Ky. App. 1987), *overruled on other grounds by Oliver v. Shultz,* 885 S .W.2d 699 (Ky. 1994). "Kentucky courts apply their own law where Kentucky has a significant interest in the case." *Id.* For tort actions, Kentucky courts hold that "*any* significant contact with Kentucky is sufficient to allow an application of Kentucky law." *Reichwein v. Jackson Purchase Energy Corp.*, 397 S.W.3d 413, 416 (Ky. App. 2012) (emphasis added). What is more, "Kentucky favors the application of its own law *whenever it can be justified." Stavens v. Buridi*, No. 2016-CA-001301-MR, 2018 WL 6601879, at *3 (Ky. App. Dec. 14, 2018), *review denied* (Apr. 11, 2019) (emphasis added). Unlike claims sounding in contract, choice-of-law questions about tort claims "should not be determined on the basis of a weighing of interests, but simply on the basis of whether Kentucky has enough contacts to justify applying Kentucky law." *Arnett v. Thompson*, 433 S.W.2d 109, 113 (Ky. 1968); *see also Adam v. J.B. Hunt Transp., Inc.*, 130 F.3d 219, 230 (6th Cir. 1997) (overruled on other grounds).

For a tort action, if there are "significant contacts—not necessarily the most significant contacts—with Kentucky," the Kentucky law should be applied. *Foster v. Leggett*, 484 S.W.2d 827, 829 (Ky. 1972) (that a Kentucky resident was involved in a car accident which occurred in

---

[1] The Sixth Circuit routinely recognizes Kentucky's "provincial tendency" when applying Kentucky's choice-of-law rules. *See, e.g., Wallace Hardware Co. v Abrams*, 223 F.3d 382, 391 (6th Cir. 2000) ("On at least two occasions, we likewise have noted this provincial tendency in Kentucky choice-of-law rules."); *Adam.*, 130 F.3d at 230 ("Kentucky does take the position that when a Kentucky court has jurisdiction over the parties, '[the court's] primary responsibility is to follow its own substantive law.' " (alteration in original) (quoting *Foster*, 484 S.W.2d at 829)); *Johnson v. S.O.S. Transp., Inc.*, 926 F.2d 516, 519 n. 6 (6th Cir.1991) ( "Kentucky's conflict of law rules favor the application of its own law whenever it can be justified."); *Harris Corp. v. Comair, Inc.*, 712 F.2d 1069, 1071 (6th Cir.1983) ("Kentucky courts have apparently applied Kentucky substantive law whenever possible . . . [I]t is apparent that Kentucky applies its own law unless there are overwhelming interests to the contrary." (emphasis in original) (discussing *Breeding v. Mass. Indem. & Life Ins. Co.*, 633 S.W.2d 717 (Ky.1982))).

Ohio was sufficient contact to justify the application of Kentucky law, even though the accident occurred in Ohio and the tortfeasor was an Ohio resident).

Cunningham states, "[t]his case, of course, involves an action to recover stolen property, which is not a tort." [DE 28 at 137]. But Cunningham cites no authority in support of this statement and does not analyze the issue. The Restatement of Torts describes tortious conduct as:

> The word 'tortious' is appropriate to describe **not only** an act which is intended to cause an invasion of an interest legally protected against intentional invasion, or conduct which is negligent as creating an unreasonable risk of invasion of such an interest, **but also conduct which is carried on at the risk that the actor shall be subject to liability for harm caused thereby, although no such harm is intended and the harm cannot be prevented by any precautions or care which it is practicable to require.**

RESTATEMENT (SECOND) OF TORTS § 6 (1965) (emphasis added). Memorial Hall's claim sounds more in tort as the complaint centers on the alleged tortious acts of Cunningham. The claim does not sound in contract. It does not implicate any rule of contract or require interpretation of any instrument. Because recovery of stolen property sounds more in tort than contract, the analysis of which state's law to apply is not one of the "most" significant contacts, but whether Kentucky has any significant contact. *Foster*, 484 S.W.2d at 829.[2]  Although Memorial Hall is in Louisiana and presumably the theft occurred there, Cunningham is a resident of Kentucky and the uniforms have resided here for over 30 years. [DE 28, Def's Mot. Summ. Judg., at 2]. This case concerns a Kentucky resident and citizen, and property that has been located in Kentucky for three decades. This satisfies the contact requirement under Kentucky's test. Because Kentucky has significant contact, Kentucky law applies.

---

[2] The result may be the same even if the Court were to apply the most significant contacts test as the property has been located in Kentucky for 30 years, suit was filed in Kentucky, and the holder of the property resides in Kentucky.

b. *Laches under Kentucky law.*

Under Kentucky law, "this doctrine [laches] serves to bar claims in circumstances where a party engages in unreasonable delay to the prejudice of others rendering it inequitable to allow that party to reverse a previous course of action." *Moore v. Com.*, 357 S.W.3d 470, 494 (Ky. 2011), as modified on denial of reh'g (Nov. 23, 2011), citing *Plaza Condo. Ass'n v. Wellington Corp.*, 920 S.W.2d 51, 54 (Ky.1996). "'A party asserting laches must show: (1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting it.'" *Id.* (quoting *Herman Miller, Inc. v. Palazzetti Imps. & Exps., Inc.*, 270 F.3d 298, 320 (6th Cir.2001)). If the statute of limitations has not passed, as is the case here, the "one claiming a bar based on delay must also show prejudice." *Id.*, citing *Plaza*, 920 S.W.2d at 54.  Whether a delay is unreasonable is a question dependent on the facts. *Id.* A Kentucky court has described the difference between statute of limitations and laches:

> [i]n contrast to a statute of limitations that provides a time period within which the suit must be instituted, laches asks whether the plaintiff in asserting his or her rights was guilty of unreasonable delay that prejudiced the defendants. Laches is not applied as an absolute rule, as is the case with a statute of limitations, but its applicability is determined in each case in light of its particular circumstances. Unlike the defense of limitation of action, the defense of laches is evaluated on a case by case basis because it invokes an inexcusable delay, without necessary reference to duration, in asserting an equitable claim. Fairness will bar application of laches where the result would be unjust; laches does not operate harshly, as may a statute of limitation. Statutes of limitation, further, may work great practical injustice-the doctrine of laches, never.

*Bank Josephine v. McGuire,* No. 2004-CA-001002-MR, 2005 WL 856896, at *2 (Ky. App. Apr. 15, 2005), citing 27A AM.JUR.2D EQUITY § 148 (1996) (footnotes omitted). A Kentucky court has emphasized that prejudice is key:

> It is true that the familiar maxim "Equity aids the vigilant, not those who slumber on their rights", furnishes an important rule to prevent the enforcement of stale demands independent of statutory periods of limitations. Mere lapse of time, however, is not the only element to be considered in applying the rule. A more important consideration is whether delay in asserting the claim has worked such prejudice or disadvantage to parties adversely interested or such changed conditions have occurred in the meantime that enforcement of the claim is rendered inequitable. There is no fixed rule by which to measure the degree of laches which is sufficient to bar the enforcement of a right. Each case must be determined according to its own particular facts and circumstances.

*Fightmaster v. Leffler,* 556 S.W.2d 180, 183 (Ky. App. 1977).

Whether Cunningham's equitable defense of laches should apply is not appropriate at this stage of the proceedings as material disputes of fact exist. Memorial Hall commenced suit within the applicable statute of limitations, which cuts against a finding of unreasonable delay.

First, whether Memorial Hall's timing in filing suit was because of a lack of diligence involves questions of fact. Memorial Hall noted that the Stolen Coats were missing in or around 1979. [DE 34 at 573, Ricci Aff. ¶ 14]. Cunningham argues that Memorial Hall has been too passive, only investigating when presented with information about the Stolen Coats and that it "had many opportunities to discovery that Dr. Cunningham was in possession of its missing uniforms" but "availed itself of none of them." [DE 28-1 at 149]. But Cunningham concedes that Memorial Hall had no actual knowledge of the uniforms' location  when they discovered them missing [DE 28-1 at 148]. Knowing that the items were missing does not mean that Memorial Hall lacked diligence in bringing suit.

Memorial Hall has limited resources to search for missing items, but follows up on information that comes available about stolen items. [DE 34 at 582, DE 28-3 Cangelosi Dep. at 196]. Cunningham argues Memorial Hall knew the locations of the Stolen Coats when it discovered they were missing in 1979 based on a "Military Clothing inventory card" [DE 36 at 646, n.6 Ricci Aff. Exh. H, DE 34-9] and the "Herbst inventory card" [DE 36 at 647, n.12 Ricci

Aff. Exh. D, DE 34-5]. But, Maj. Henry Morris investigated the Stolen Coats in 1979 without success. [DE 34 at 573-74, 589]. Memorial Hall investigated a sighting of the Pipes Uniform at a show in the 1980s without success. [DE 34 at 574]. In the 1990s, Memorial Hall engaged the FBI and law enforcement to investigate and attempt to recover stolen property, including the Stolen Coats. [DE 34 at 573]. Memorial Hall provided the FBI with information presented evidence of its efforts to recover the Stolen Coats. [DE 34 at 573]. In 2015, Fred Adolphus informed Memorial Hall that he had seen the Stolen Coats in Cunningham's collection. [DE 34 at 575]. Memorial Hall then began trying to recover the items from Cunningham.

Whether Memorial Hall's investigations lacked diligence or were reasonable is a question of fact. The Court will not decide that issue here without trial presentation of this evidence and the ability to weigh credibility. In addition, to lack of diligence, and in particular because Memorial Hall's claim is timely under the statute of limitations, Cunningham has to show prejudice. That also involves questions of fact not appropriate for summary judgment. Cunningham argues that he is prejudiced by lost evidence and the inability to bring an action against his seller to recover the purchase price for the stolen property. [DE 28-1 at 151-53]. John Graham, seller of the Pipes uniform, and George Gorman, seller of the Herbst uniform, are dead. [DE 28-1 at 15]. Other witnesses that could have relevant information from the time the Stolen Coats went missing are dead. [DE28-1 at 151]. The passage of time has caused prejudice. But this prejudice is perhaps greater to Memorial Hall as it carries the burden of proving its claim.

But then there is also Memorial Hall's argument that Cunningham cannot argue laches because he has unclean hands. Kentucky courts have long recognized that "[h]e who comes into equity must come with clean hands . . ." *Maas v. Maas' Adm'r*, 255 S.W.2d 497, 498 (Ky. 1952) (internal quotation marks omitted) (citation omitted). A party has unclean hands and is "precluded

from [equitable] relief if that party 'engaged in fraudulent, illegal, or unconscionable conduct' in connection 'with the matter in litigation.'" *Mullins v. Picklesimer*, 317 S.W.3d 569, 577 (Ky. 2010) (quoting *Suter v. Mazyck*, 226 S.W.3d 837, 843 (Ky. App. 2007)). The doctrine of unclean hands, however, does not "appl[y] to all misconduct" or "operate so as to 'repel all sinners from courts of equity.'" *Id*. (citation omitted); *Suter*, 226 S.W.3d at 843 (quoting *Dunscombe v. Amfot Oil Co*., 256 S.W. 427, 429 (Ky. 1923)). "A trial [court's] decision to invoke the equitable defense of the unclean hands doctrine rests within its sound discretion." *Mullins*, 317 S.W.3d at 577 (citation omitted).

Memorial Hall argues that Cunningham hid that the Stolen Coats were in his possession from Memorial Hall as early as 1985 and that Memorial Hall would have sought to recover the coats upon learning they were in Cunningham's possession. [DE 34 at 590]. Memorial Hall argues that Cunningham hid that he had the Pipes uniform from Memorial Hall in his 1985 letter to Memorial Hall. [DE 34 at 590]. Cunningham disputes that he knew at that time the Pipes Uniform belonged to Memorial Hall. [DE 36 at 653]. In 1989, Cunningham visited Memorial Hall and reviewed the inventory card records for the Stolen Coats, including Chief Morris's notes from his investigation. [DE 34 at 575]. Cunningham asked if he could see the Herbst and Pipes Uniforms. [DE 34 at 576]. Cunningham testified that the curator hold him they were missing. [*Id*.] Cunningham told no one the Stolen Coats were in his possession because he did not want Memorial Hall to ask him to donate the items. [*Id*.] Whether this conduct rises to the level of unclean hands involves questions of fact for resolution at trial.

In short, whether Cunningham's equitable defenses of laches is valid or Memorial Hall's defense of unclean hands is valid, involves questions of fact for at trial. Under Kentucky law, applying the equitable doctrine of laches is left to the discretion of the court. *Madison Capital Co.,*

*LLC v. S & S Salvage, LLC*, 765 F. Supp. 2d 923, 936 (W.D. Ky. 2011). While a jury will not decide this issue, it would be appropriate for the Court to empanel an advisory jury for these issues, *see* Fed. R. Civ. P. 39(c) ("In an action not triable of right by a jury, the court . . . may try any issue with an advisory jury . . ."); *see, e.g.*, Journey Acquisition–II, L.P. v. EQT Prod. Co., 830 F.3d 444, 451 (6th Cir. 2016). Cunningham's motion for summary judgment on the defense of laches is denied.

### 3.  Motion in Limine to Limit Expert Testimony

Memorial Hall moves in limine to exclude the expert testimony of Cunningham. First, Memorial Hall argues that Cunningham's expert disclosure violates the requirements of Rule 26(a)(2). [DE 29 at 440]. Second, Memorial Hall argues that Cunningham is not qualified to testify as an expert. [DE 29 at 441].

### a.  *Cunningham's Expert Disclosure.*

Cunningham's amended Rule 26 disclosure[3] provides as follows:

> The Defendant intends to provide expert testimony himself based on his decades of experience collecting and researching civil war artifacts and uniforms. Michael Cunningham intends to provide expert opinions about the traits and characteristics used to identify and distinguish authentic civil war uniforms, and in particular, the number of ways the two uniforms that he owns differ from the inventory descriptions of Memorial Hall Museum's missing Pipes and Herbst uniforms, including their condition, buttons, stenciling, fabric, piping, and garment type and manufacture. The Defendant is further expected to testify consistent with his deposition testimony and opinion given therein.

---

[3] Cunningham's original Rule 26 disclosure:

> The Defendant intends to provide expert testimony himself based on his decades of experience collecting and researching civil war artifacts and uniforms. In particular, Michael Cunningham intends to provide expert opinions about the traits and characteristics used to identify ad distinguish authentic civil war uniforms. The Defendant is also expected to testify consistent with his deposition testimony and opinions given therein.

[DE 26, Disc.]

[DE 27, Am. Disc.]. The first issue is whether Cunningham's disclosure falls under the requirements of Rule 26(a)(2)(B), *Witnesses Who Must Provide a Written Report*, or Rule 26(a)(2)(C), *Witnesses Who Do Not Provide A Written Report*.

Expert disclosures "eliminate 'unfair surprise to the opposing party.'" *City of Owensboro v. Ky. Utilities Co.*, No. 4:04-CV-87-M, 2008 WL 4642262, at *3 (W.D. Ky. Oct. 14, 2008) (quoting *Muldrow ex rel. Muldrow v. Re-Direct, Inc.*, 493 F.3d 160, 167 (D.C. Cir. 2007). Experts who are "retained or specially employed to provide expert testimony in the case or one whose duties as the party's employees regularly involve giving expert testimony" must disclose a report containing "a complete statement of all opinions the witness will express and the basis and reasons for them." Fed. R. Civ. P. 26(a)(2)(B). To comply with the requirements of Rule 26(a)(2)(B), a report must contain:

> (i) a complete statement of all opinions the witness will express and the basis and reasons for them;
> (ii) the facts or data considered by the witness in forming them;
> (iii) any exhibits that will be used to summarize or support them;
> (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;
> (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and
> (vi) a statement of the compensation to be paid for the study and testimony in the case.

Fed. R. Civ. P. 26(a)(2)(B)(i)-(vi). "Section 26(a)(2)(B) does not limit an expert's testimony simply to reading his report." *Thompson v. Doane Pet Care Co.*, 470 F.3d 1201, 1203 (6th Cir. 2006). Instead, "[t]he rule contemplates that the expert will supplement, elaborate upon, explain and subject himself to cross-examination upon his report." *Id*

Rule 26(a)(2)(C) establishes the disclosure requirements for expert witnesses who are not required to provide a written report. Under Rule 26(a)(2)(C), *Witness who Do Not Provide a Written Report*, a disclosure must still report the "(i) the subject matter on which the witness is

expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and (ii) a summary of the facts and opinions to which the witness is expected to testify."

Cunningham argues that he is not subject to the more extensive requirements of Rule 26(a)(2)(B) because "he did not retain himself to give expert testimony" and has never given testimony on Civil War artifacts. [DE 33 at 553]. Memorial Hall argues that because of the unusual nature of this case, it is unclear whether Cunningham serving as his own expert requires disclosure under 26(a)(2)(B). [DE 29 at 443].

"Rule 26(a)(2)(C) is meant to apply only to so-called hybrid witnesses, *i.e.*, fact witnesses who can also provide expert testimony . . ." *Deere & Co. v. FIMCO Inc.*, 239 F. Supp. 3d 964, 979 (W.D. Ky. 2017) citing *Call v. City of Riverside*, No. 3:13-cv-133, 2014 WL 2048194, at *7 (S.D. Ohio May 19, 2014). The distinction between retained and non-retained expert is explained as:

> [i]n order to give the phrase "retained or specially employed" any real meaning, a court must acknowledge the difference between a percipient witness who happens to be an expert and an expert who without prior knowledge of the facts giving rise to litigation is recruited to provide expert opinion testimony. It is this difference, we think, that best informs the language of the rule.

*Id*. at 980, citing *Downey v. Bob's Discount Furniture Holdings, Inc*., 633 F.3d 1 (1st Cir. 2011). The typical example of a percipient witness to which Rule 26(a)(2)(C) applies is a treating physician who is "part of the ongoing sequence of events and arrives at his causation opinion during treatment, his opinion testimony is not that of a retained or specially employed expert." *Id*. A treating physician's "opinion about causation is premised on personal knowledge and observations made in the course of treatment, no report is required under the terms of Rule 26(a)(2)(B)." *Id.*  On the other hand, a retained expert "comes to the case as a stranger and draws the opinion from facts supplied by others, in preparation for trial, he reasonably can be viewed as retained or specially employed for that purpose, within the purview of Rule 26(a)(2)(B)." *Id.*

18

Cunningham's disclosure is subject to the requirements of 26(a)(2)(C), not 26(a)(2)(B). Cunningham's opinions turn on observations based on his personal knowledge and observations made of the Stolen Coats, and as a collector over several decades. Cunningham does not come to this case as a stranger as he is a party, or draw his opinion from facts supplied by others.

But Cunningham's amended disclosure does not satisfy the lesser requirements of Rule 26(a)(2)(C). Cunningham's amended disclosure broadly states two topics that he intends to opine: (1) the traits and characteristics used to identify and distinguish authentic civil war uniforms, and (2) how the two uniforms that he owns differ from Memorial Hall's inventory descriptions, including their condition, buttons, stenciling, fabric, piping, and garment type and manufacture. [DE 27, Am. Disc.]. While Cunningham has broadly identified the subject matter on which he expects to testify, Rule 26(a)(2)(C) requires he provide "a summary of the facts and opinions to which the witness is expected to testify." Cunningham's amended disclosure fails to provide a summary of the facts and opinions to which he expects to testify. The information provided by Cunningham in his Response [DE 33 at 554-55] is far more specific about the facts and opinions he expects to provide.

Even though these topics may have been discussed during his disposition [DE 28-5, Cunningham Dep.], mere reference to his deposition transcript does not satisfy the requirements. *Emerson Elec. Co. v. Suzhou Cleva Elec. Appliance Co*., No. 4:13-CV-1043SPM, 2015 WL 8770712, at *2 (E.D. Mo. Dec. 15, 2015) (high-level references to the subject matter of the case, along with a statement that the testimony will be "consistent with" documents insufficient to satisfy Rule (a)(2)(C)). But because these topics were discussed in his deposition, providing Memorial Hall with some notice, exclusion is not warranted. Thus the Court will require

Cunningham to submit an amended disclosure that complies with Rule 26(a)(2)(C) and the Court will allow Memorial Hall to re-depose Cunningham on the topics of his expert disclosure.

### b. Cunningham's qualification as an expert.

The next issue is whether Cunningham meets the standard to testify as an expert. The admissibility of expert testimony is set forth in Rule 702 of the Federal Rules of Evidence. Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

In *Daubert v. Merrell Dow Pharm., Inc.,* "the Supreme Court established a general gatekeeping obligation for trial courts to exclude from trial expert testimony that is unreliable and irrelevant." *Conwood Co. v. U.S. Tobacco Co.,* 290 F.3d 768, 792 (6th Cir.2002) (alteration and internal quotation marks omitted). "Under Rule 702 of the Federal Rules of Evidence, 'a proposed expert's opinion is admissible . . . if the opinion satisfies three requirements. First, the witness must be qualified by knowledge, skill, experience, training, or education. Second the testimony must be relevant, meaning that it will assist the trier of fact to understand the evidence or to determine a fact in issue. Third, the testimony must be reliable.'" *Burgett v. Troy-Bilt LLC*, 579 Fed. App'x 372, 376 (6th Cir. 2014) (quoting *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 528-29 (6th Cir. 2008)). Memorial Hall argues that Cunningham is not qualified to testify and this expected expert testimony is not reliable. [DE 29 at 444-48].

First, the Court will examine Cunningham's qualifications. The Court does "not consider 'the qualifications of a witness in the abstract, but whether those qualifications provide a

foundation for a witness to answer a specific question.'" *Id.* (quoting *Berry v. City of Detroit*, 25 F.3d 1342, 1351 (6th Cir. 1994)). The Court must determine whether the witness is qualified to offer an opinion on the specific area of expertise. *In re Welding Fume Prods. Liab. Litig.*, No. 1:03-CV-17000, 2005 WL 1868046, at * 33 (N.D. Ohio Aug. 8, 2005) ("An expert may be highly qualified to respond to certain questions and to offer certain opinions, but insufficiently qualified to respond to other, related questions, or to opine about other areas of knowledge.")   "Under the Federal Rules of Evidence, the only thing a court should be concerned with in determining the qualifications of an expert is whether the expert's knowledge of the subject matter is such that his opinion will likely assist the trier of fact in arriving at the truth.  The weight of the expert's testimony must be for the trier of fact." *Mannino v. International Mfg. Co.*, 650 F.2d 846, 851 (6th Cir. 1981). Thus, this Court need only determine whether the expert witness has the minimal qualifications to express the expert opinion. *Id.*

Cunningham seeks to offer opinions on the traits and characteristics used to identify and distinguish authentic Civil War uniforms, and how the Stolen Coats differ from Memorial Hall's inventory descriptions, including their condition, buttons, stenciling, fabric, piping, and garment type and manufacture. [DE 27, DE 33]. Cunningham has collected and researched Civil War artifacts for nearly 40 years. [DE 28-5, Cunningham Dep. at 280-81]. He also spent significant time research and compiling information related to the Stolen Coats. [*Id.* at 291-93, 317-20].

Memorial Hall asserts that because Cunningham testified that he's "not a big Confederate buyer," he is not qualified. [DE 29 at 445]. But Cunningham does have experience with Confederate artifacts [DE 28-5, Cunningham Dep. at 301], including the Stolen Coats. This experience, coupled with forty years collecting and researching Civil War artifacts, qualifies him to testify on the traits and characteristics of Civil War uniforms. It also qualifies him  to compare

the characteristics of the Stolen Coats to the descriptions given in the Memorial Hall inventory descriptions.

The proportion of Cunningham's experience with Confederate versus Union artifacts is an issue of weight best suited for cross examination. *Brooks v. Caterpillar Glob. Mining Am., LLC*, No. 4:14CV-00022-JHM, 2016 WL 276126, at *3 (W.D. Ky. Jan. 21, 2016)  (knowledge as an engineer and experience as both a mining and a project engineer qualified expert to offer opinions about whether operator handle on roof bolter was defective while lack of practical experience designing safety features on roof bolters was an issue of weight best suited for cross-examination).

Memorial Hall argues that Cunningham is not qualified to testify about museum inventory practices and what is normal or accepted in the museum field. [DE 29 at 445]. But Cunningham does not seek, based on the information provided in the amended disclosure [DE 27] or his Response [DE 33], to offer any opinion on this issue. Instead, it appears Cunningham intends to compare the written descriptions of the Stolen Coats in the museum's records with the features of the Stolen Coats. [DE 33 at 562]. What is or is not written in the Memorial Hall descriptions of the Stolen Coats is a matter of fact and not an issue of expert testimony. Memorial Hall argues that Cunningham misinterprets these descriptions, but that appears to be an issue for cross-examination. Cunningham is not offering an expert opinion about the practices of museum inventory.

Finally, Memorial Hall argue that Cunningham's opinions are not reliable. Along with expert qualifications, "[t]he Court must determine whether evidence proffered under Rule 702 'both rests on a reliable foundation and is relevant to the task at hand.'" *Powell v. Tosh*, 942 F. Supp. 2d 678, 686 (W.D. Ky. 2013) (quoting *Daubert*, 509 U.S. at 597). To assist with this

determination, the Supreme Court in *Daubert* laid out several factors[4] for the courts to consider. *Daubert*, 509 U.S. at 592–594. Courts have "stressed, however, that *Daubert's* list of specific factors neither necessarily nor exclusively applies to all experts or in every case. . . . [i]n some cases . . . the factors may be pertinent, while in other cases the relevant reliability concerns may focus upon personal knowledge or experience." *First Tennessee Bank Nat. Ass'n v. Barreto*, 268 F.3d 319, 335 (6th Cir. 2001) (finding that the *Daubert* factors "unhelpful" in a case involving "expert testimony derived largely from [expert's] own practical experiences throughout forty years in the banking industry [because] [o]pinions formed in such a manner do not easily lend themselves to scholarly review or to traditional scientific evaluation") (internal citations omitted). "[W]hether *Daubert's* specific factors are, or are not, reasonable measures of reliability in a particular case is a matter that the law grants the trial judge broad latitude to determine." *Id.*

Memorial Hall's arguments again center on Cunningham's qualifications as they relate to the reliability of his expert opinions. [DE 29 at 447-48]. But as the Court found above, Cunningham's personal experience and knowledge gained as collector of Civil War artifacts over the course of four decades show a sufficient reliability to testify on the traits and characteristics of Civil War uniforms. It is also reliable enough to compare the characteristics of the Stolen Coats to the descriptions given in the Memorial Hall inventory descriptions. *Barreto,* 268 F.3d at 335 (personal knowledge or experience may be the exclusive reliability inquiry where expert's testimony derived largely from decades of practical experience). Memorial Hall argues Cunningham is trying to opinion upon the methods of a museum's inventory practices when he

---

[4] The *Daubert* factors include "[w]hether a 'theory or technique . . . can be (and has been) tested'; [w]hether it 'has been subjected to peer review and publication'; [w]hether, in respect to a particular technique, there is a high 'known or potential rate of error' and whether there are 'standards controlling the technique's operation'; and [w]hether the theory or technique enjoys 'general acceptance' within a 'relevant scientific community.'" *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149–50 (1999) (quoting *Daubert*, 509 U.S. at 592–594).

compares the descriptions of the Stolen Coats from Memorial Hall's documents to the Stolen Coats. But again, the words written in those documents are merely facts and Memorial Hall has not sufficiently explained why the wording itself an issue of museum inventory practice.

Memorial Hall argues that Cunningham's opinions are unreliable because they "rest, at least in part, on a belief that Confederate uniforms are abundantly in existence today and that researchers would expect to find multiple uniforms attributable to the same Confederate enlisted soldier." [DE 29 at 448]. Cunningham argues that his research revealed that Herbst and Pipes each owned and wore more than one uniform during the Civil War and that there was a regulation from Confederate States that required enlisted soldiers to receive four coats for every three years of an enlistment. [DE 33 at 565], [DE 28-5 Cunningham Dep. at 292, 296-97, 332]. It is not the Court's job to determine whether Cunningham's opinion is correct, but whether it rests on a reliable foundation, rather than unsupported speculation. *In re Scrap Metal Antitrust Litig.*, 527 F.3d at 529–30. "Where an expert's testimony amounts to 'mere guess or speculation,' the court should exclude his testimony, but where the opinion has a reasonable factual basis, it should not be excluded. Rather, it is up to opposing counsel to inquire into the expert's factual basis." *United States v. L.E. Cooke Co.*, 991 F.2d 336, 342 (6th Cir. 1993). Cunningham's research provides a factual basis for his opinion so that it meets the reliability requirements of Rule 702. Any weakness in Cunningham's factual basis goes to the weight of his opinion, not admissibility. *Id*.

For these reasons, Cunningham's expert opinions are admissible under FRE 702 and *Daubert*.

## CONCLUSION

For these reasons, the Court **ORDERS** as follows:

1.       Defendant's Motion for Summary Judgment [DE 28] is **DENIED;**

2.       Plaintiff's Motion in Limine to Exclude or Limit Expert Testimony of Michael Cunningham [DE 29] is **GRANTED** in part.  Defendant shall supplement his expert disclosure in compliance with Fed. R. Civ. P. 26(a)(2)(C) by **May 7, 2020** and Plaintiff may depose the Defendant on his expert report.

3.       By **May 21, 2020**, the parties shall file a status report outlining:

    a.   Any remaining discovery;

    b.   An estimate of the time necessary to file pretrial motions including Rule 26(a)(3) witness lists, designations of witnesses whose testimony will be by deposition, and exhibit lists;

    c.   Whether the parties would like to mediate;

    d.   An estimate of the length of trial;

    e.   Mutually convenient dates for trial.